STATE OF LOUISIANA, IN THE INTEREST OF J. W., III.
No. 2009 KJ 0656.
Court of Appeals of Louisiana, First Circuit.
September 14, 2009.
Not Designated for Publication
HILLAR C. MOORE, III, District Attorney, MONISA L. THOMPSON, Assistant District Attorney, Attorneys for State of Louisiana.
JOSEPH K. SCOTT, III, Attorney for Juvenile-Appellant, J. W., Ill.
Before: PARRO, KUHN, and McDONALD, JJ.
PARRO, J.
J.W., III, a juvenile, was alleged to be a delinquent child by a petition filed on October 15, 2008, pursuant to the Children's Code. The petition alleged that the juvenile committed the felony-grade delinquent act of attempted forcible rape, a violation of LSA-R.S. 14:27 and 14:42.1. He initially denied the allegations contained in the petition. Prior to an adjudicatory hearing, the juvenile withdrew his denial and entered a best interest plea of no contest to the allegations. On December 9, 2008, following a Boykin examination, the juvenile court accepted the plea and adjudicated the juvenile to be a delinquent child with respect to the attempted forcible rape offense. The court ordered a predisposition report and set the matter for a disposition hearing on January 9, 2009. After several continuances, the disposition hearing was held on February 27, 2009. At the disposition hearing, the court committed the juvenile to the custody of the Department of Public Safety and Corrections for a period of two years, with credit for time served.
On appeal, the juvenile challenges the court's denial of his motion to withdraw the plea and his motion to continue the disposition hearing. He also challenges the disposition as excessive. Finding no merit to these assigned errors, we affirm the adjudication and the disposition.

FACTS
Because the juvenile entered a best interest plea of no contest, the facts of this case were never fully developed at the adjudicatory hearing. The factual basis, as recited by the prosecutor in open court, provided:
[W]ere the state to have had a trial on this matter, we would present [the victim] whose [sic] present in the courtroom. She would testify that on September 15th in East Baton Rouge Parish on Daniels Street, she was confronted by J.W. and two co-defendants, [L.R.] and [D.J.] who attacked her  physically attacked her, all three of them, forced her into a shed off the side of her house, her paw-paw and grandmother's  great grandmother's house. Umm, the three of them groped her breasts. They pulled up her shirt, touched her breasts. They pulled down her pants and touched her panties, her vagina. They did not touch under her panties. They touched her stomach area. She, all the while was screaming "don't, no, don't, leave [me] alone, pushing, shoving, kicking[.]" Umm, at some point, somebody drove up, distracting the boys and she was able to get away, she opened the door and then eventually [ran] away. Umm, [L.R.] and [J.W.] ran in one direction, [D.J.] ran in another direction. Umm, Officer Reef is present, Officer Reef is present on two different cases your honor. In the courtroom he would testify that he actually showed up shortly thereafter and caught [L.R.] and [J.W]., not realizing that they had just come from this particular incident and it was only later that he found out umm, the boys were laughing umm, [the victim] will tell you she just recently lost her grandmother, she she was home alone and she was able to get back into the house. She tried to get into the house but the lock wasn't working and she was so scared. She ended up taking off the screen, climbing through a window to get into the house, umm, and the boys were coming back but that's when I think the officer got there. Umm, again, she had just recently lost her grandmother who had  her great-grandmother who had raised her. She didn't say anything that night. She went to school and tried to tell the school and they didn't pay any attention to her. She's a special education student your honor uh and it was when she came home and  the next day and told her school and her great aunt or her aunt and then an officer was called and he did find blood. There was actual evidence on the door, umm, of the incident. I talked to [the victim], very believable, went back and talked to the school, umm, one of the boys confessed to the incidents of the crime uh  and uh  that  that's the testimony that you would hear today were the state to have a trial your honor.

MOTION TO WITHDRAW PLEA
In his first assignment of error, the juvenile asserts the juvenile court erred in denying his motion to withdraw his plea. Specifically, he asserts the plea of no contest in this case is not valid because it was entered, on the advice of counsel, as a means for the juvenile to be released from custody. The juvenile states he originally wanted to exercise his right to a trial on the allegations, but his court-appointed counsel insisted that he enter the no contest plea. He claims his counsel further enticed him by stating that he could be released from custody if he pled as advised. The juvenile claims his sole motivation for entering the plea was to be released from custody. He further asserts his appointed counsel was ineffective in failing to adequately investigate the case, in failing to inform him of the consequences of the no contest plea, and in urging him to enter the no contest plea to a serious sex offense in exchange for deferral of prosecution of two other counts that were not dismissed.
At the hearing on the motion to withdraw the guilty plea, counsel presented argument regarding the validity of the plea and ineffective assistance of counsel.
The claim of ineffective assistance of counsel is to be assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See State v. Fuller, 454 So.2d 119, 125 n.9 (La. 1984). Pursuant to this test, the defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is deficient when it can be shown that he made errors so serious that he was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. Strickland, 466 U.S. at 687. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.
Because a plea of guilty waives a criminal defendant's fundamental right to a jury trial, right to confront his accusers, and his privilege against self-incrimination, due process requires, as a prerequisite to its validity, that the plea be a voluntary and intelligent relinquishment of known rights. There must be an affirmative showing in the record that the defendant was informed of the constitutional privilege against self-incrimination, the right to trial by jury, and the right to confront his accusers and that he knowingly and intelligently waived them. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
A defendant has no absolute right to withdraw a previously entered guilty plea. State v. Barnes, 97-2522 (La. App. 1st Cir. 9/25/98), 721 So.2d 923, 925. Louisiana Code of Criminal Procedure article 559 gives the court the discretion to permit the withdrawal of a guilty plea at any time prior to sentencing. LSA-C.Cr.P. art. 559(A). However, this discretion cannot be exercised arbitrarily, and an abuse of discretion can be corrected on appeal. State v. Calhoun, 96-0786 (La. 5/20/97), 694 So.2d 909, 912. As a general rule, a denial of a motion to withdraw a guilty plea will not be reversed on appeal if the record clearly shows that the defendant was informed of his rights and the consequences of his plea, and that the plea was entered voluntarily. State v. King, 99-1348 (La. App. 5th Cir. 5/17/00), 761 So.2d 791, 793, writ denied. 00-1824 (La. 6/29/01), 794 So.2d 822.
In this case, the juvenile entered a plea of no contest to the attempted forcible rape allegations.[1] Prior to accepting the plea, the juvenile court was apprised of the factual basis for the plea. The court explained the elements of attempted forcible rape and inquired whether the juvenile understood the offense. The court also questioned the juvenile concerning his understanding of the plea and what it entails. During a very thorough Boykin examination, the court informed the juvenile of the triad of constitutionally guaranteed trial rights, asked thorough questions to ascertain that the rights were fully understood, and advised the juvenile of the consequences of pleading guilty (i.e. waiver of trial rights). In response to questioning by the court, the juvenile stated that he understood his rights and realized that he would be waiving the rights by pleading guilty. The juvenile further stated that he was freely and voluntarily waiving the rights without any promises or inducements. Thereafter, the court found that a factual basis existed for the plea and that the plea was knowingly and voluntarily made.
Following our complete review of the record, we conclude the juvenile court did not err or abuse its discretion in finding that the no contest plea in this case was knowingly, voluntarily, and intelligently made. Prior to entering the plea, the juvenile, while represented by counsel, was extensively and thoroughly interrogated by the court. The court more than adequately advised the juvenile of his constitutional rights and the consequences of pleading guilty. Throughout the examination, the juvenile indicated that he understood the rights and was willingly waiving them by pleading guilty. He assured the court that the no contest plea was not induced by force from anyone.
Considering the foregoing, we find that the Boykin transcript clearly shows that the juvenile was carefully informed of his rights and the consequences of his plea, and that the plea was entered into knowingly and voluntarily. In fact, at the hearing on the motion to withdraw, counsel for the juvenile acknowledged that the "Boykin was constitutionally sufficient." We further find that the juvenile fully appreciated the consequences of his actions. There is nothing in the record to support a claim that the juvenile was misled, and there is no indication that his plea was in any way coerced. The juvenile's general and conclusory allegations of ineffectiveness of his counsel are unsupported by the record. The court did not abuse its discretion in failing to allow the juvenile to withdraw the no contest plea.
This assignment of error lacks merit.

DENIAL OF MOTION TO CONTINUE
In this assignment of error, the juvenile contends the juvenile court erred in denying his motion for a continuance of the disposition hearing based upon the inclusion of incomplete information in the predisposition report. Specifically, the juvenile asserts the predisposition report, which was based upon an incomplete psychological evaluation, failed to include relevant information regarding his physical, developmental, mental, and medical history, as well as his home environment (i.e., family composition and dynamics, stability, economic status, participation in community or religious activities, and any physical, mental, or emotional handicaps, substance abuse, or criminal history of any of its members). He further complains that the report fails to include information regarding his current physical description and developmental and medical history required by LSA-Ch.C. art. 890.
The court has great discretion in deciding whether to grant a motion for continuance, and this decision will not be disturbed on appeal in the absence of an abuse of that discretion. State v. Castleberry, 98-1388 (La. 4/13/99), 758 So.2d 749, 755, cert. denied. 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); State v. Spencer, 444 So.2d 354, 356 (La. App. 1st Cir. 1983), writ denied. 488 So.2d 694 (La. 1986). Whether denial of a motion for continuance is justified depends on the circumstances of the case. Generally, the denial of a motion for continuance is not reversible absent a showing of specific prejudice. State v. Strickland, 94-0025 (La. 11/1/96), 683 So.2d 218, 229.
The record in this case reflects that the petition was filed on October 15, 2008. The juvenile entered the no contest plea and was adjudicated to be a delinquent child on December 9, 2008. Under LSA-Ch.C. art. 892, prior to entering a judgment of disposition, the juvenile court is required to hold a disposition hearing. The disposition hearing may be conducted immediately after the adjudication and shall be conducted within thirty days after the adjudication. However, for good cause, the thirty-day period may be extended. LSA-Ch.C. art. 892. The court originally set the disposition hearing for January 9, 2009. On that date, when the matter came before the court for the disposition hearing, the juvenile's mother indicated she would be hiring a private attorney to represent the juvenile at the disposition hearing. At the request of the juvenile's mother, the court relieved the office of the public defender of the appointment to represent the juvenile and reset the matter for disposition on January 23, 2009. On January 23, 2009, Joseph Scott, the juvenile's current counsel, enrolled as counsel of record. On motion of Mr. Scott, the disposition hearing was reset for February 20, 2009. On February 3, 2009, counsel for the juvenile filed a motion to withdraw the plea. On February 17, 2009, counsel for the juvenile filed a motion to continue the disposition hearing. On February 20, 2009, the previously scheduled disposition hearing and the hearing on the juvenile's motion to withdraw the plea were set for February 27, 2009. On this date, the court heard argument on both of the motions.
On the motion to continue, counsel for the juvenile argued that the recommendation in the predisposition report was based upon an incomplete psychosexual evaluation. In denying the motion to continue the disposition hearing any further, the court noted that the incomplete nature of the evaluation was caused by the juvenile and his mother.[2]
The court concluded that an additional delay of the disposition hearing would not be necessary and could possibly be detrimental, given the juvenile's actions since the adjudication. The court further noted that during his time out on bond before his disposition hearing, the juvenile continued to violate the rules of his school and the court-imposed conditions of his release. The information included with the predisposition report reflects that since the adjudication, the juvenile accumulated numerous unexcused absences and disciplinary referrals at school. The court noted that although he was given the opportunity to show some improvement following his adjudication, he showed none. The juvenile was repeatedly disrespectful to authorities at school, he was continuously disruptive in class, refused to follow school rules, was recommended for expulsion from school, and failed to appear at the expulsion hearing, all in violation of the conditions of his release. The court further noted that the juvenile had violated his curfew condition, and he and his mother failed to comply with the custodial promise included as conditions of his release. Considering the foregoing, the court found that there was an undue risk, as shown by the defendant's post-adjudication behavior, that the juvenile would commit another crime during a period of suspended commitment or probation. The court noted that all reasonable efforts to avoid removing the juvenile from his family (allowing him to remain out on bond following his adjudication) had failed. The court concluded that the juvenile was in need of custodial treatment in a custodial environment.
Under the facts and circumstances of this case, we find that the juvenile court used sound discretion in denying the defendant's motion to continue the disposition hearing. Notwithstanding the incomplete nature of the psychosexual evaluation, which was voluntarily interrupted by the juvenile and his mother, the court had before it all of the necessary information to impose a reasonable and just disposition. Although he was aware of the pending disposition, the juvenile repeatedly showed absolutely no regard for rules or conditions imposed upon him and no respect for authority. As the court noted, further psychosexual examination of the juvenile would not have affected the disposition, which was based primarily on the juvenile's post-adjudication behavior and activities. Therefore, the juvenile has not shown, nor does the record indicate, that he was prejudiced by the court's denial of the motion to continue. As previously mentioned, even when an abuse of discretion is shown, denial of a continuance will not be reversed absent a showing of specific prejudice. Castleberry, 758 So.2d at 756.

EXCESSIVE DISPOSITION
In this assignment of error, the juvenile argues that, in sentencing him to the Department of Public Safety and Corrections for two years, the court imposed an excessive disposition. He argues that such a harsh disposition for his first adjudication of delinquency is a direct result of the flawed and incomplete predisposition report.
After adjudicating a juvenile to be a delinquent, a court is required to impose the "least restrictive disposition" authorized by Articles 897 through 900 of the Children's Code "which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society." LSA-Ch.C. art. 901(B). Louisiana Children's Code article 897(D) authorizes the court to commit a juvenile who has committed a felony-grade delinquent act to the custody of the Department of Public Safety and Corrections. Under LSA-Ch.C. art. 903(A), the court is required to state for the record the factual basis and the considerations taken into account in imposing the particular disposition chosen.
As previously noted, the juvenile court specifically indicated in its reasons for disposition that the two-year disposition was based primarily on the juvenile's post-adjudication activities. Furthermore, considering the nature of the offense, and the lasting effect it will undoubtedly have on the young victim, we find that the record supports the disposition imposed. As the court correctly noted, the juvenile has shown absolutely no effort or desire to change his disruptive and disrespectful behavior. Even after being adjudicated a delinquent child for the commission of the felony-grade offense, the juvenile, while out on bond, repeatedly violated the conditions of his release. The court did not abuse its discretion in committing 3.W. to the Department of Public Safety and Corrections for two years. This is the least restrictive disposition that would fit the circumstances of the case, the needs of the juvenile, and the best interest of society. This assignment of error lacks merit.
ADJUDICATION AND DISPOSITION AFFIRMED.
NOTES
[1] A plea of no contest is equivalent to an admission of guilt and is treated as a guilty plea. See State v. Gordon, 04-0633 (La. App. 1st Cir. 10/29/04), 896 So.2d 1053, 1061, writ denied. 04-3144 (La. 4/1/05), 897 So.2d 600.
[2] The evaluation report reflects that during the juvenile's psychological evaluation at Assessment & Psychological Services, the mother became agitated and demanded to know "who is paying the bill." The mother, apparently implying that there was an ongoing conspiracy to convict the juvenile, stated that the office was being paid by the "state," and as such, "represents the state." She demanded that testing be ceased immediately.